IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MEGAN JANETIS, *individually and on behalf of others similarly situated,* | * | |
| | * | |
| *Plaintiff,* | | |
| v. | * | Civil Action No. RDB-23-2628 |
| LIFEBRIDGE HEALTH, INC. | * | |
| *Defendant.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

This matter arises from a dispute over unpaid overtime compensation under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*; Maryland Wage and Hour Law ("MWHL"), MD. CODE ANN., LABOR & EMPL. §§ 3-401, *et seq.*; and Maryland Wage Payment and Collection Law ("MWPCL"), MD. CODE ANN., LABOR & EMPL. §§ 3-501, *et seq.* On April 18, 2025, Plaintiff filed an Unopposed Motion to Approve Settlement and Dismiss Claims With Prejudice ("Unopposed Motion"). (ECF No. 34, 34-1.) Plaintiff's submission has been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). On May 1, 2025, this Court by Order (ECF No. 35) GRANTED Plaintiff's Unopposed Motion. This Memorandum Opinion further expounds upon the reasons for that decision.

## BACKGROUND

Plaintiff Megan Janetis ("Plaintiff" or "Janetis") brings this putative class and collective action on behalf of herself and all hourly, non-exempt employees of Defendant LifeBridge Health, Inc. ("Defendant" or "LifeBridge") who had a meal period automatically deducted from their wages at any time on or after September 17, 2020. (ECF No. 1 ¶¶ 24, 26.) Janetis

seeks recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages based on her allegation that LifeBridge subjected her and other employees to automatic lunch deduction without providing *bona fide* meal breaks. (ECF No. 1 ¶¶ 17–18, 168.) LifeBridge denied Plaintiff's allegations, denied liability, and raised various affirmative defenses. (ECF No. 8 at 12–25.) Janetis has not moved for—and the Court has not granted—certification of a collective or class, but two individuals, Carolyn Hurlbut and Tanisha Robinson (collectively, "Opt-In Plaintiffs"), have filed consents to join this lawsuit. *See* (ECF Nos. 2, 25.)

On December 8, 2023, the parties agreed to stay the case for early mediation and informally exchanged documents for settlement discussions. (ECF No. 21.) On April 18, 2024, and May 8, 2024, the parties attended mediation sessions with experienced wage and hour mediator Dennis Clifford ("Mr. Clifford"). (ECF No. 34-1 at 6.) These two sessions did not result in an agreement, but the parties consented to additional stays to further settlement discussions. (ECF No. 28; ECF No. 34-1 at 6.) On February 20, 2025, the parties again met with Mr. Clifford for a settlement discussion in which they reached a settlement in principle. (ECF No. 34-1 at 6.) The parties agreed to resolve the matter on a collective basis and executed a formal Settlement Agreement ("Settlement Agreement" or "Agreement") (ECF No. 34-2) setting the terms of settlement. (ECF No. 34-1 at 6.)

The Settlement Agreement applies to approximately 14,219 "Putative Collective Members" who were employed as a non-exempt employees of listed LifeBridge entities between September 27, 2020, and May 21, 2024. (ECF No. 34-1 at 6; ECF No. 34-2.) It also details a Notice Procedure by which Putative Collective Members may execute a Consent to Join and Release Form to be considered Qualified Claimants. (ECF No. 34-1 at 7.) The

Agreement provides for a maximum gross settlement amount of $8,000,000 ("Gross Fund"), which includes (1) settlement payments for distribution to Janetis and Qualified Claimants; (2) Janetis's service payment; (3) Settlement Administration Costs; and (4) a negotiated award of Plaintiff's attorneys' fees of 33% of the Gross Fund and costs of $10,716.33. (ECF No. 34-1 at 7, 8; ECF No. 34-2 § III(B)(2), (F)(4).) Individuals who do not timely meet the Notice Procedure will not participate or release claims via the settlement. (ECF No. 34-1 at 8.) Janetis and Qualified Claimants will be paid damages on a pro rata basis from the Net Fund, which reflects the amount remaining in the Gross Fund after payment of Janetis's $8,000 service award, Settlement Administration Costs, and Plaintiff's attorneys' fees and costs. (ECF No. 34-1 at 7, 8; ECF No. 34-2 § III(F), (F)(3).) The Agreement also includes a release provision by each Qualified Claimant[1] and Janetis will execute a general release against LifeBridge in exchange for accepting and receiving an approved Service payment. (ECF No. 34-1 at 9; ECF No. 34-2 § IV(A), (B).) On April 18, 2024, Plaintiff filed an Unopposed Motion (ECF No. 34) requesting that this Court approve the Agreement. By Order (ECF No. 35) dated May 1, 2025, this Court approved the Agreement.

## STANDARD OF REVIEW

When evaluating settlement agreements for approval under the FLSA, courts should approve settlements that "reflect[] a 'reasonable compromise of disputed issues' rather than a

---

[1] The release provision provides that each Qualified Claimant releases LifeBridge from "any and all federal and state wage and hour claims and wage payment claims that accrued between September 27, 2020 and the date on which the Qualified Claimant executes a Consent to Join and Release Form, including, without limitation, all federal Fair Labor Standards Act claims, all Maryland Wage and Hour Law claims, all Maryland Wage Payment and Collection Law claims, all state and federal claims for unpaid overtime or straight time wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses." (ECF No. 34-1 at 9; ECF No. 34-2 § IV(A).)

'mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 U.S. Dist. LEXIS 83414, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In making such a determination, district courts in the Fourth Circuit "employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 U.S. Dist. LEXIS 27329, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). Pursuant to *Lynn's Food Stores*, an FLSA settlement generally should be approved if it "reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." 679 F.2d at 1355. As a first step, a court must determine whether a *bona fide* dispute exists as to a defendant's liability under the FLSA. *Saman*, 2013 U.S. Dist. LEXIS 83414, at *7 (citing *Lane v. Ko-Me, LLC*, Civ. No. DKC-10-2261, 2011 U.S. Dist. LEXIS 97870, at *2 (D. Md. Aug. 31, 2011)). Second, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness, which requires weighing a number of factors, including: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). If a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must also be "independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the

4

amount the wronged employee recovers under a settlement agreement." *Lane*, 2011 U.S. Dist. LEXIS 97870, at *3.

## ANALYSIS

Plaintiff has asked this Court to approve the proposed Settlement Agreement and dismiss the case with prejudice. The Court has found that approval is proper because the Settlement Agreement reflects a fair and reasonable solution of a *bona fide* dispute between the parties. (ECF No. 35.) In addition, the Court had found reasonable the award of attorneys' fees contained in the settlement agreement. (*Id.*)

### I.   There is a *Bona Fide* Dispute Between the Parties

To determine whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. In this case, Plaintiff identifies five *bona fide* disputes in the Unopposed Motion. (ECF No. 34-1 at 11–15.) First, the parties dispute whether LifeBridge has any liability for the interrupted meal break claim asserted in Plaintiff's Complaint. (*Id.* at 11.) To establish a violation of FLSA based on interrupted meal breaks despite an automatic mealtime deduction, a Plaintiff must show that "(1) she performed compensable work during meal breaks for which she was not paid; and (2) [Defendant] had 'actual or constructive knowledge' that she worked during meal breaks without compensation." *Marshall v. Novant Health, Inc.*, 2020 U.S. Dist. LEXIS 170784, at *18 (W.D.N.C. Sept. 17, 2020) (citing *Roy v. Cty. of Lexington*, 141 F.3d 533, 545 (4th Cir. 1998)). LifeBridge contends that no FLSA violation occurred because employees reported while clocking out of each shift whether they had taken their full lunch break, and the system would

5

cancel the automatic deduction if an employee indicated she had not taken her full break. (ECF No. 34-1 at 12.)  Second, and relatedly, LifeBridge maintains that it has no liability for uncompensated meal breaks that were shorter than thirty minutes.  LifeBridge argues that under the U.S. Court of Appeals for the Fourth Circuit's "predominant benefit test," which asks whether an employee throughout her employment uses the mealtime for her own benefit or the employer's benefit, no liability would apply to meal breaks of fewer than thirty minutes here.  (*Id.* at 13.)  Plaintiff vigorously disputes both positions, arguing that she and Putative Collective Members worked during meal breaks such that they are owed compensation, including compensation for meal breaks shorter than thirty minutes.  (*Id.* at 12, 14.)  The parties' disagreements as to the alleged violations constitute *bona fide* disputes under the FLSA.

Next, the parties dispute whether an FLSA collective would be certified for any claims. (*Id.* at 14.)  LifeBridge argues that "substantial individualized" inquiries are required to determine whether meal breaks shorter than thirty minutes are compensable.  Plaintiff disagrees with LifeBridge's position such that the certification of an FLSA collective would be heavily disputed. (*Id.*)  Finally, in the parties' last two disputes, they disagree as to the likelihood that Plaintiffs would recover liquidated damages and damages for a three-year—rather than two-year—limitations period. (*Id.*)  The FLSA authorizes liquidated damages, *see* 29 U.S.C. § 216(b), but provides that such damages may be denied or reduced where the employer acted in good faith and with a reasonable belief that it did not violate the FLSA, 29 U.S.C. § 260. LifeBridge has raised affirmative defenses that it acted in good faith and reasonably believed its meal-break compensation policies and practices were lawful, but Plaintiff and Putative Collective Members contend that liquidated damages are appropriate. (*Id.* at 14–15.)  The

6

parties also dispute the appropriate limitations period. Under the FLSA, the standard limitations period is two years, but it may be extended to three years for "willful" violations. *See* 29 U.S.C. § 255(a). Plaintiffs bear the burden to show that a violation is "willful," meaning that the employer "knew or showed reckless disregard for the matter of whether its conduct" violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1998). The parties in this case dispute whether LifeBridge's alleged failure to pay wages for shortened meal breaks was "willful" within the meaning of FLSA. Each of these five disputes constitutes a *bona fide* dispute under the FLSA.

## II.     The Settlement Agreement is Fair and Reasonable

To determine whether a settlement agreement is fair and reasonable, courts consider the following six factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173–74 (4th Cir. 1975)); *see also Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 409 (D. Md. 2014). Each of these factors favor approval of the Settlement in this case.

Under the first two factors, the Settlement is fair and reasonable. The parties engaged in extensive informal discovery, including exchanging and reviewing thousands of pay and time records for the proposed class. (ECF No. 34-1 at 15.) Additionally, the parties collaborated to resolve complex and disputed issues related to damages calculations and meal period deduction defenses. *See Duprey*, 30 F. Supp. 3d at 409 (explaining that avoiding informal

discovery may facilitate settlement efforts). Settlement avoids protracted litigation—including more formal discovery—and its associated risks and expenses. (ECF No. 34-1 at 16.)

Under the third factor, in the absence of evidence otherwise, there is a presumption that no collusion or fraud occurred between counsel. *Lomascolo*, 2009 WL 3094955, at *12 (E.D. Va. Sept. 28, 2009). There is no evidence to suggest fraud or collusion occurred in this case, and the parties reached the Settlement Agreement after two mediations and several months of arms-length negotiations. (ECF No. 34-1 at 16.) Similarly, the fourth factor—the experience and opinions of plaintiffs' counsel—further supports approval. "Generally, where counsel is well-versed in the underlying law, courts presume that clients have been appropriately advised on the merits and challenges associated with settlement." *Fernandez v. Washington Hosp. Servs., LLC*, Civ. No. AAQ-23-0839, 2023 WL 4627422, at *3 (D. Md. July 19, 2023). In this case, Plaintiffs' counsel, Josephson Dunlap, has significant experience in "plaintiff-side wage and hour cases across the nation and has litigated numerous off-the-clock, meal break cases" like the instant action. (ECF No. 34-1 at 16; ECF No. 34-4 ¶ 3.) Jackson Lewis is a nationwide defense firm dedicated to labor and employment law, and counsel for both parties agree that the Agreement is a fair and reasonable settlement of Plaintiff's contested claims. (ECF No. 34-1 at 16.)

Finally, the probability of success on the merits and the relationship between the settlement and potential recovery favors approval of the Agreement. As discussed above, the parties heavily dispute liability and possible damages in this case. (ECF No. 34-1 at 17.) LifeBridge asserts that even if Plaintiff proved liability, the maximum treble damages under Maryland wage law would amount to approximately $5,746,000 for all plaintiffs. (*Id.*) After

8

payment of settlement administration costs, attorneys fees, and Plaintiff's service award, the Net Fund will be approximately $5,300,000. (*Id.*) Thus, the damages fund is about 92% of the total potential treble damages that could be awarded were Plaintiff to prevail in litigation. (*Id.*) Janetis has acknowledged the risk in pursuing further litigation—particularly that she would recover minimal back pay even if she proved liability—and LifeBridge has recognized that it risked a significant potential judgment if Janetis were to prevail. (*Id.*) The Unopposed Motion reflects that the Settlement avoids such risks while providing meaningful relief to Janetis and Putative Collective Members. (*Id.*)

### III. The Settlement Agreement Awards Reasonable Attorneys' Fees

An FLSA settlement must also contain reasonable provisions regarding attorneys' fees, *Duprey*, 30 F. Supp. 3d at 411, and the Court has discretion to determine the reasonableness of the fee amount. *Spriggs v. Merling*, No. 1:20-cv-3395-JMC, U.S. Dist. LEXIS 21273, at *2 (D. Md. Feb. 7, 2023); *see also Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995) ("It is for the district court in the first instance to calculate an appropriate award of attorney's fees."). Here, the parties have agreed that Plaintiffs' Counsel will receive 33% of the Gross Fund as attorneys' fees, plus reimbursement of $10,716.33, which represents reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter. (ECF No. 34-1 at 9; ECF No. 34-2 § III(F)(4).) This fee request is reasonable and commensurate with the skill and experience of the participating attorneys and the legal support they have provided.

As Judge Chasanow of this Court has recognized, "[t]here are two primary methods of calculating attorneys' fees: (1) the 'percentage of recovery' or 'percentage of fund' method; and (2) the 'lodestar' method." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 681 (D. Md.

9

2013) (citing *Whitaker v. Navy Fed. Credit Union*, Civ. No. RDB-09-2288, WL 3928616, at *4 (D. Md. Oct. 4, 2010)). Both methods seek to ensure that counsel is fairly compensated, and the "current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases." *Id.* (quoting *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998)). Under the percentage of fund method, this Court and other district courts in the Fourth Circuit evaluate seven factors:

> (1) The results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy.

*See id.* (collecting cases).[2] These factors should be applied flexibly in consideration of the facts of each case, "and in certain cases, one factor may outweigh the rest." *Id.* (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005)). The Fourth Circuit has recognized more generally that "[t]he most critical factor in calculating a reasonable fee award is the degree of success obtained." *McKnight v. Circuit City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001).

In this case, the results obtained for the class favor approval because the Settlement will provide immediate relief for Putative Collective Members in the form of direct monetary payments. Each Qualified Claimant will receive a pro rata portion of the Net Fund, and Class Counsel helped to produce a result that will confer monetary benefit for up to 14,219 individuals. *See* (ECF No. 34-2 at 1; ECF No. 34-1 at 19). Janetis and other plaintiffs will receive substantial benefit while avoiding protracted litigation. Similarly, the second factor—the quality and skill of the attorneys involved—favors approval of the requested fees. This

---

[2] In this case, no objections have been raised. *See* (ECF No. 34-2 at 18–23).

action demanded considerable wage and hour law expertise to (1) evaluate the merits of the claims for Janetis and 14,219 putative class members, (2) accurately calculate damages, and (3) successfully negotiate settlement across multiple mediations and settlement negotiations. (ECF No. 34-1 at 19.)  Plaintiffs' and defense counsel are both highly experienced in complex class and collective wage and hour litigation and have negotiated settlements in similar actions. *See* (ECF No. 34-4 ¶¶ 11–12.)  Josephson Dunlap exclusively handles plaintiff-side wage and hour litigation and has negotiated several wage claims related to uncompensated meal break cases like this case, while Jackson Lewis is a nationwide defense firm experienced in labor and employment law.  (ECF No. 34-4 ¶¶ 3–4, 12; ECF No. 34-1 at 19.)

Consideration of the risk of nonpayment and awards in similar cases further favors the fee award.  Class counsel litigated this matter knowing the inherent risks of off-the-clock claims such as those raised here, and Plaintiffs' Counsel accepted the case on a contingency basis such that it assumed the risk of years of investment of time, effort, and money without a guarantee of recovery.  (ECF No. 34-4 ¶ 31; ECF No. 34-1 at 19–20.)  Moreover, percentage of fund fee awards in similar cases typically range between 15% and 40%, and this Court has repeatedly found reasonable fee awards of 33% of the fund.  *See, e.g.*, *Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368 (D. Md. 2016) (approving fee award of 33% in FLSA settlement); *Amador v. Healthy Howard, Inc.*, Civ. No. WMN-15-632, 2015 WL 4069388, at *3 (D. Md. July 2, 2015) (approving fee award of 38.3% in case raising FLSA and Maryland wage law claims); *In re Titanium Dioxide Antitrust Litig.*, Civ. No. RDB-10-0318, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (approving award of 33.333% attorneys' fees); *see also Starr v. Credible Behav. Health, Inc.*, Civ. No. PJM-20-2986, 2021 WL 2141542, at *5 (D. Md. May 26, 2021) ("A request

for one-third of a settlement fund is common in this circuit and generally considered reasonable.").

The complexity of this action also favors approval of the fee award. To evaluate the complexity of a particular case, "courts consider whether negotiations were hard fought, complex, or arduous." *Singleton*, 976 F. Supp. 2d at 686 (quoting *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 761 (S.D.W. Va. 2009)). This matter, which raises both FLSA and Maryland wage law claims, has been pending for more than a year. (ECF No. 34-1 at 21.) The FLSA, MWHL, and MWPCL each provide for unique statutes of limitations, damages, and exemptions such that resolution of this matter required evaluation of each statute as applied to the facts of this case. (*Id.*) The parties implemented a stay early in litigation to engage in informal discovery in which they exchanged thousands of records related to LifeBridge employees' pay and time data. (*Id.*) The parties used these records to construct and analyze damages models and negotiate settlement throughout the stay period. (*Id.*) Following two mediation sessions, an additional conference with a mediator, and informal negotiations, the parties spent months drafting, reviewing, and finalizing the Settlement Agreement to adequately resolve the claims of more than 14,000 Putative Collective Members. (*Id.*)

Finally, public policy favors the award of the requested attorneys fees. "Public policy generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions." *Graham v. Famous Dave's of Am., Inc.*, Civ. No. DKC-19-0486, 2022 WL 17584272, at *11 (D. Md. Dec. 12, 2022) (citing *Jones*, 601 F. Supp. 2d at 765). As noted above, where there is a common fund, "[d]istrict courts within the Fourth Circuit have

consistently endorsed the percentage method." *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972 at *1 (S.D.W. Va. May 23, 2013). In this case, settlement will vindicate the rights of over 14,000 employees by challenging LifeBridge's alleged failure to pay overtime wages under the FLSA. (ECF No. 34-4 at 21–22.) Employees who opt-in to the Settlement will receive immediate benefit in the form of payment of the allegedly withheld wages, which in turn serves to deter employers from violating FLSA and state wage laws. (*Id.* at 22.)

Relatedly, Class Counsel's request for costs is reasonable. "Reimbursement of reasonable costs and expenses to counsel who create a common fund is both necessary and routine." *Kelly v. Johns Hopkins Univ.*, Civ. No. GLR-16-2835, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020) (quoting *Savani v. URS Prof'l Sols., LLC*, 121 F. Supp. 3d 564, 576 (D.S.C. 2015)). Generally, expenses are awarded in addition to the fee percentage. *Id.* (citing *Smith v. Krispy Kreme Doughnut Corp.*, Civ. No. WLO-05-0187, 2007 WL 119157, at *3 (D. Md. Jan. 10, 2007). In this case, Class Counsel requests reimbursement of $10,716.33 in reasonable and necessary expenses incurred in litigating this matter. *See* (ECF No. 34-1 at 23; ECF No. 34-4 ¶ 34.) Plaintiff represents in the Unopposed Motion that these expenses include "reasonable out-of-pocket expenditures such as filing fees, postage, copying, client meetings, mediation, and legal research." (ECF No. 34-1 at 23 (citing ECF No. 34-4 ¶ 34).) The Fourth Circuit has deemed similar expenses reasonable. *See, e.g.*, *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Accordingly, the fees and litigation costs under the Agreement are reasonable and appropriate.

Finally, the Settlement Administrator, CAC Services Group, LLC ("CAC Services"), is reasonable. CAC Services is an experienced class action wage and hour settlement claims administrator and estimates the costs incurred at $43,258.67, which will be deducted from the

13

Gross Fund, to effectuate the processing and mailing of Notice Packets and Settlement payments to the FLSA Collective members. (ECF No. 34-1 at 23.) Where no class members receive notice that administrative costs will be deducted from the fund and do not object, deduction of a claim administration fee is appropriate. *See Singleton*, 976 F. Supp. 2d at 690. No objections have been raised here, and CAC Services is an appropriate administrator.

## CONCLUSION

For the foregoing reasons, Plaintiff's Unopposed Motion (ECF No. 34) is GRANTED. A separate Order was filed at ECF No. 35.

/s/  
_____  
Richard D. Bennett  
United States Senior District Judge

Dated: May 1, 2025